UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONNA MENDOZA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>INTUITIVE SURGICAL, INC.,<br><br>　　　　Defendant. | Case No. 18-CV-06414-LHK<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL**<br><br>Re: Dkt. Nos. 67, 69 |

Plaintiff Donna Mendoza ("Plaintiff") brings this action against Defendant Intuitive Surgical, Inc. ("Defendant") alleging negligence, products liability, and strict liability claims arising from alleged defects in Defendant's da Vinci robotic surgery system. ECF No. 20 ("Am. Compl."). Before the Court is Defendant's motions to exclude the expert opinions of Dr. Helen Salsbury, ECF No. 67 ("Salsbury Mot."), and Mr. Roger Odell, ECF No. 69 ("Odell Mot."). Having considered the parties' briefs, the relevant law, and the record in this case, the Court DENIES in part and GRANTS in part Defendant's motions to exclude.

I.     **BACKGROUND**

　　A. **Factual Background**

　　　　1. **The Parties**

Plaintiff Donna Mendoza is a citizen of Indiana who resides in Hammond, Indiana. Am. Compl. ¶ 3. Defendant Intuitive Surgical, Inc. is a Delaware corporation with a principal place of business in Sunnyvale, California. *Id.* ¶ 4.

### 2. The da Vinci System

Defendant produces the da Vinci system, which is a robotic, "multi-armed, remote controlled, surgical device." *Id.* ¶ 9. Defendant also produces "'EndoWrist' instruments for use in surgery by the [da Vinci system]." *Id.* ¶ 10. "The most commonly used EndoWrist instrument is the Hot Shears Monopolar Curved Scissors" ("MCS"). *Id.* ¶ 46. The MCS "allows doctors to both cut and cauterize tissue during surgical procedures," and the MCS cauterizes "through the application of monopolar electricity." *Id.* ¶ 47. The MCS requires use of a "tip cover accessory" ("TCA") which covers the MCS and "insulate[s] the instrument's metal parts" to "prevent the electricity from spreading to unwanted areas." *Id.* The MCS "is used in virtually all da Vinci hysterectomies." *Id.* ¶ 46.

### 3. Plaintiff's Surgery and Complications

On October 12, 2011, Plaintiff underwent a hysterectomy and the operating surgeon used a da Vinci system with an MCS and TCA. *Id.* ¶¶ 52, 56. However, shortly thereafter, "[Plaintiff] began experiencing severe abdominal pain." *Id.* ¶ 53. Accordingly, three days after Plaintiff's surgery, Plaintiff "went to the ER . . . and was diagnosed with a small bowel obstruction and received a laparoscopy with laparotomy surgery." *Id.* ¶ 53. According to Plaintiff, Plaintiff "has undergone numerous medical procedures because of [Plaintiff's] injury" and has suffered "pain and emotional distress." *Id.* ¶¶ 54–55.

## B. Procedural History

On October 19, 2018, Plaintiff filed a complaint against Defendant in this district and alleged various tort claims arising from injuries that Plaintiff allegedly suffered because of defects in Defendant's da Vinci system. *See* ECF No. 1.

On January 3, 2019, Defendant filed a motion to dismiss Plaintiff's complaint. ECF No.

2

Case No. 18-CV-06414-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

1  11. However, on January 17, 2019, Plaintiff filed an amended complaint, Am. Compl., and on
2  January 22, 2019, United States District Judge Beth Labson Freeman terminated Defendant's
3  motion to dismiss as moot. ECF No. 21.
4      On January 28, 2019, the case was reassigned to the undersigned judge, ECF No. 24, and
5  on the same day, the Court related the instant case to *Trump v. Intuitive Surgical Inc.*, No. 5-18-
6  CV-06413-LHK (N.D. Cal. filed Oct. 19, 2018), and to *Bohannon v. Intuitive Surgical, Inc.*, No.
7  5-18-CV-02186-LHK (N.D. Cal. filed Apr. 12, 2018). ECF No. 23.
8      On March 6, 2020, Defendant filed the instant motions to exclude the expert opinions of
9  Dr. Helen Salsbury and Mr. Roger Odell. Salsbury Mot.; Odell Mot. On March 26, 2020,
10 Plaintiff filed oppositions to each of Defendant's motions to exclude. ECF Nos. 75 ("Odell
11 Opp'n"), 76 ("Salsbury Opp'n").
12     Additionally, also on March 6, 2020, Defendant filed a motion for summary judgment.
13 ECF No. 66. On March 27, 2020, Plaintiff filed an opposition, ECF No. 73-2, and on April 3,
14 2020, Defendant filed a reply. ECF No. 78.

## II.   LEGAL STANDARD

16     Federal Rule of Evidence 702 allows admission of "scientific, technical, or other
17 specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the
18 evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony is admissible
19 pursuant to Rule 702 if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509
20 U.S. 579, 589 (1993). An expert witness may provide opinion testimony if: (1) the testimony is
21 based upon sufficient facts or data; (2) the testimony is the product of reliable principles and
22 methods; and (3) the expert has reliably applied the principles and methods to the facts of the case.
23 Fed. R. Evid. 702.
24     When considering expert testimony offered pursuant to Rule 702, the trial court acts as a
25 "gatekeeper" by "making a preliminary determination that the expert's testimony is reliable."
26 *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002). In *Daubert*,

United States District Court
Northern District of California

the United States Supreme Court identified "four factors that may bear on the analysis": (1) whether a theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory is generally accepted in the scientific community. *Murray v. S. Route Maritime SA*, 870 F.3d 915, 922 (9th Cir. 2017) (citing *Daubert*, 509 U.S. at 593–94). However, the Ninth Circuit has explained that "the reliability analysis remains a malleable one tied to the facts of each case" and that the "*Daubert* factors are exemplary, not constraining." *Id.* The Ninth Circuit has also stated that "[i]t is important to remember that the factors are not 'equally applicable (or applicable at all) in every case,'" and that "[a]pplicability 'depend[s] on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *Id.* (first quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995), then quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)) (third alteration in original).

"Because of the fluid and contextual nature of the inquiry, district courts are vested with 'broad latitude' to 'decid[e] how to test an expert's reliability' and 'whether or not [an] expert's relevant testimony is reliable.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 152–53) (alterations and emphasis in original). Thus, the Court "may permissibly choose not to examine factors that are not 'reasonable measures of reliability in a particular case.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 153); *see also id.* at 924 ("District courts have broad range to structure the reliability inquiry and may choose not to comment on factors that would not inform the analysis.").

Moreover, the inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 594, 596). "Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

4

Case No. 18-CV-06414-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

## III. DISCUSSION

Defendant moves to exclude the expert opinions of Dr. Helen Salsbury ("Salsbury") and Mr. Roger Odell ("Odell"). *See* Salsbury Mot.; Odell Mot. The Court addresses each of Defendant's motions in turn.

### A. Defendant's Motion to Exclude Salsbury's Expert Opinion

Salsbury is an obstetrician and gynecologist who will testify that Plaintiff's "complications and subsequent procedures were caused by thermal injury to the bowel as a result of [defects in] the da Vinci System."[1] ECF No. 76-2 at 2, 6 ("Salsbury Decl."). Specifically, Salsbury "opines that [Plaintiff] sustained a bowel injury during [Plaintiff's] *da Vinci*-assisted hysterectomy as a result of stray electricity from the [da Vinci system's] MCS." Salsbury Opp'n at 1. Defendant seeks to exclude Salsbury's opinions regarding (1) the cause of Plaintiff's injury, and (2) alleged defects in the da Vinci system's MCS and TCA. *See* Salsbury Mot. at 1. The Court addresses each of Salsbury's opinions separately.

#### 1. Salsbury's Testimony as to the Cause of Plaintiff's Injury

Salsbury used a "differential diagnosis" approach to conclude that a defect in the da Vinci system most likely caused Plaintiff's injury. *See* Salsbury Decl. at 6–9; Salsbury Mot. at 1. For a differential diagnosis, a physician considers "all potential causes, then rules out the [potential causes] as to which there is no plausible evidence of causation, and then determines the most likely [potential] cause among those that cannot be excluded." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1234 (9th Cir. 2017). Here, Salsbury considered multiple potential causes for Plaintiff's injuries, including surgical error, several patient risk factors, direct application of thermal energy, indirect application of thermal energy, thermal spread, and a defect in the da Vinci system. *See* Salsbury Decl. at 8–9. Salsbury then ruled out all of the potential causes other than a defect. *See id.*

---

[1] Although Salsbury's expert declaration does not explicitly refer to the MCS or TCA, during her deposition, Salsbury clarified that when she refers to "defects in the da Vinci System," she is referring to the defects in the MCS and TCA. *See, e.g.*, ECF No. 76-4 at 33:23-34:5; 49:15–20 ("Salsbury Dep.").

5
Case No. 18-CV-06414-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

1    Defendant argues that Salsbury's differential diagnosis is unreliable because Salsbury did

2 not "consider[] and rule out, two potential causes of [Plaintiff's] injury—pre-existing adhesive

3 disease and/or a defect in an electrosurgical instrument [called "EndoShears" that was also] used

4 during [Plaintiff's] surgery."  Salsbury Mot. at 3.  Specifically, Defendant states that Salsbury did

5 not consider Plaintiff's "tendency to form adhesions (*i.e.*, adhesive disease) as a [potential] cause

6 of [Plaintiff's] bowel obstruction," even though Defendant's experts testified this was "the most

7 likely cause" of Plaintiff's injury.[2]  *Id.*  Furthermore, Defendant argues that Salsbury should have

8 considered a defect in the EndoShears, for which Defendant states there are "reports of

9 malfunctions."  *Id.* at 4.  Defendant argues that Salsbury's failure to consider these two potential

10 causes renders the differential diagnosis unreliable.  *Id.* at 3–4.

11    Plaintiff responds that Salsbury conducted a proper differential diagnosis and that

12 Salsbury's differential diagnosis did in fact consider adhesive disease and a defect in the

13 EndoShears as potential causes.  *See* Salsbury Opp'n at 3.  Moreover, Plaintiff argues that "[e]ven

14 if this Court finds that Salsbury's differential diagnosis was inadequate . . . , this is not grounds for

15 exclusion according to Ninth Circuit law."  *Id.* at 4.

16    Here, the Court disagrees with Plaintiff that Salsbury "ruled in" and considered adhesive

17 disease or defects in the EndoShears as potential causes of Plaintiff's injury.  Specifically,

18 Salsbury's expert declaration acknowledges that the surgeon who operated on Plaintiff "used the

19 EndoShears . . . to cut through [] adhesions."  Salsbury Decl. at 4; *see also id.* 4–6 (further

20 referencing adhesions).  As such, Salsbury recognized the *presence* of adhesions and the use of

21 EndoShears.  However, Salsbury did not include either as a potential cause in Salsbury's "Basis of

22 Opinions & Differential Diagnosis."  *See id.* at 8–9.  Similarly, during deposition, Salsbury did not

23 address either as a potential cause of Plaintiff's injury.  *See generally* Salsbury Dep.  As such, the

24 Court concludes that Salsbury's differential diagnosis did not consider adhesive disease or a defect

---

[2] An adhesion is when two surfaces are abnormally attached or stuck together, Salsbury Opp'n at 3 n.4, which Defendant states "can cause bowel obstructions."  Salsbury Mot. at 2.

1   in the EndoShears as potential causes.  The Court must determine whether Salsbury's differential

2   diagnosis was nevertheless reliable.

3         For a differential diagnosis to be reliable, "the expert must provide reasons for rejecting

4   alternative hypotheses 'using scientific methods and procedures' and the elimination of those

5   hypotheses must be founded on more than 'subjective beliefs or unsupported speculation.'"

6   *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003).  However, the Ninth Circuit

7   has held that an expert need not "eliminate all other possible causes of a [medical] condition for

8   the expert's testimony to be reliable."  *Wendell*, 858 F.3d at 1237.  Indeed, numerous courts have

9   explicitly held that an expert's failure to even consider a potential cause during a differential

10  diagnosis is not necessarily grounds for exclusion.  *See, e.g.*, *Stanely v. Novartis Pharms. Corp.*,

11  11 F. Supp. 3d 987, 1001 (C.D. Cal. 2014) (denying a motion to exclude and holding that a

12  differential diagnosis need not consider every potential cause to be admissible); *Rosales v. City of*

13  *Los Angeles*, No. 2:13-cv-07262-SVW-AGRx, 2014 WL 12696917, at *4 (C.D. Cal. Feb. 4, 2014)

14  (same); *Stambolian v. Novartis Pharms. Corp.*, No. CV 12-4378 BRO (FMOx), 2013 WL

15  6345566, at *5 (C.D. Cal. Dec. 6, 2013) (same); *Fergusion v. Riverside Sch. Dist., No. 416*, No.

16  CS-00-0097-FVS, 2002 WL 34355958, at *9 (E.D. Wash., Feb. 6, 2002) (same).

17        The instant case does not represent a situation in which the expert completely failed to

18  consider and rule out *any* other potential causes.  *See* Salsbury Decl. at 8–9; *see also Claar v.*

19  *Burlington N. R.R.*, 29 F.3d 499, 502 (9th Cir. 1994) (excluding an expert opinion where the

20  expert did not make "any effort to rule out other possible causes for the injuries plaintiffs complain

21  of").  Additionally, the Court does not find the additional potential causes to be so obvious that

22  Salsbury's failure to explicitly address these potential causes renders Salsbury's testimony

23  unreliable.  *See* Salsbury Mot. at 2–4 (citing *Nelson v. Matrixx Initiatives*, No. C 09-02904 WHA,

24  2012 WL 3627399, at *8–11 (N.D. Cal. Aug. 21, 2012) (rejecting a differential diagnosis for

25  failure to account for obvious alternative causes where the expert only considered a single other

26  potential cause for the injury)).

27

28  Case No. 18-CV-06414-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE
EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

Specifically, although the surgeon who performed Plaintiff's hysterectomy noted adhesions, the surgeon also noted that there were no injuries or adhesions on the bowel. *See* Salsbury Decl. at 4–5 ("[The surgeon noted] there was no evidence of injury to any structures including the bowel."). Further, as Salsbury highlights, the surgeon used the EndoShears to "lyse adhesions" that were not on the bowel, *see id.*, and thus "the EndoShears were nowhere near the bowel and could not have caused the injury," Salsbury Opp'n at 4. Thus, whether these explanations are more likely causes of Plaintiff's injury is a question for the fact finder, which in the instant case is a jury. Accordingly, to the extent Salsbury failed to consider adhesive disease or a defect in the EndoShears, this failure goes to the weight of Salsbury's opinion, not to admissibility. Defendant may cross-examine Salsbury regarding these potential causes at trial. *See Stanley*, 11 F. Supp. 3d at 1001 ("Defendant can cross-examine [the expert] regarding additional factors that he did not rule out during trial.").

Accordingly, the Court DENIES Defendant's motion to exclude Salsbury's opinion regarding causation.

### 2. Salsbury's Testimony Regarding Product Defect

In addition to Salsbury's testimony on causation, Salsbury opines "[a]n injury to the bowel of this type indicates a defect in the da Vinci System, which—based upon [Salsbury's] review of medical literature and [Defendant's] internal documents—[] is known to produce unintended amounts of electrical current which can thermally injure the surrounding tissue." Salsbury Decl. at 6.

Defendant argues that this opinion is unreliable because Salsbury "had no knowledge or information about the condition of the *specific* [MCS or TCA] used in [Plaintiff's da Vinci-assisted surgery]" and "fails to provide any specific design feature, manufacturing process, or warning relating to the [da Vinci system's] MCS or [TCA] that was allegedly defective." Salsbury Mot. at 5 (emphasis added). Moreover, Defendant argues that "Salsbury is not qualified to form opinions about the design and manufacture of the MCS and its [TCA] used in [Plaintiff's]

8

Case No. 18-CV-06414-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

case." *Id.* As such, Defendant argues that Salsbury's opinion "does not fit the facts of the case" and is inadmissible. *Id.*

Plaintiff responds that Salsbury's opinion is admissible because "Salsbury reviewed ample peer-reviewed literature" that discusses the defects. Salsbury Opp'n at 5. Furthermore, Plaintiff argues that even though Salsbury did not have information pertaining to the *specific* MCS or TCA used in Plaintiff's surgery, "Salsbury is well-aware of the fact that the version . . . used in [Plaintiff's surgery] was recalled." *Id.*

Plaintiff has the better argument. Although an expert's testimony must "fit" the facts of the case, Salsbury's lack of knowledge of the condition of the *specific* MCS and TCA used in Plaintiff's surgery does not render Salsbury's testimony inadmissible. *See Daubert*, 509 U.S. at 591 (discussing requirement that evidence "fit" the facts of the case). Here, Salsbury relied on various pieces of medical literature that discuss defects in the MCS and TCA, as well as documents that relate to da Vinci system product recalls. *See* Salsbury Decl. at 11–12 (listing the materials Salsbury relied on). The defects in the literature on which Salsbury relied are the same defects alleged here: cracking and insulation failure. *See* Salsbury Dep. at 35:23–25 ("When I [Salsbury] reviewed the literature, I was quite amazed at the number of instruments that were recalled and/or fixed due to cracking."); Am. Compl. ¶¶ 58–59. Accordingly, the Court finds that Salsbury properly relied on reports of known defects to form Salsbury's expert opinion.

Although evidence of a defect in the specific MCS and TCA used in Plaintiff's surgery would no doubt strengthen Salsbury's testimony, an expert opinion does not have to be perfect. *See, e.g.*, *United States v. Cerna*, No. CR 08-0730 WHA, 2010 WL 3448528, at *7 (N.D. Cal. Sept 1, 2010) ("A method, however, need not be perfect science, nor satisfy all of the factors articulated in *Daubert*.").

Furthermore, the Court disagrees with Defendant that Salsbury's testimony is unreliable because "Salsbury is not qualified to form opinions about the design and manufacture of the MCS and its [TCA]." Salsbury Mot. at 5. Salsbury opines that in light of differential diagnosis and the

9

Case No. 18-CV-06414-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

available literature, Plaintiff's injury would indicate a defect similar to previously reported defects in the da Vinci system. Salsbury Decl. at 7; *see also* Salsbury Opp'n at 5. Because Salsbury has performed "hundreds of robotically assisted hysterectomies" and has extensive "experience with the da Vinci System," the Court concludes that Salsbury is qualified to opine that Plaintiff's injury arose from a product defect similar to previously reported defects in the da Vinci system. Salsbury Decl. at 2.

Accordingly, the Court DENIES Defendant's motion to exclude Salsbury's opinion regarding product defects. The Court now proceeds to consider Defendant's motion to exclude Odell's opinion.

### B. Defendant's Motion to Exclude Odell's Expert Opinion

Odell is an electrical engineer who will testify that Defendant's da Vinci system "was defectively designed because it did not incorporate [Active Electrode Monitoring ("AEM")] or coaxial shielding and monitoring of the shaft of the device." ECF No. 75-2 at 2 ("Odell Decl."). Broadly, AEM functions to "prevent stray energy burns off the shaft of the [da Vinci system's MCS]" and works "like a circuit breaker designed to detect an insulation failure and or excessive capacitive coupling . . . protecting the patient from an unintended burn." *Id.* at 1–2.

Defendant seeks to exclude Odell's opinions as to (1) "defects in the [da Vinci system's] MCS," which arise from the Defendant's failure to incorporate AEM, and (2) defects in the da Vinci system's TCA. *See* Odell Mot. at 1. The Court addresses each of these two purported bases for exclusion in turn

#### 1. Odell's Testimony as to Defects in the da Vinci System's MCS

Defendant seeks to exclude as unreliable Odell's testimony that the da Vinci system's MCS is defective for failure to incorporate AEM. *See* Odell Mot. at 2–4. Specifically, Defendant argues that hospitals do not widely use AEM and that there has only been a 5% adoption rate of the technology. *Id.* at 2. Moreover, Defendant states that Odell cannot point to any comparative studies that demonstrate that Defendant's MCS is unsafe without AEM. *Id.* at 3. Furthermore, in

10
Case No. 18-CV-06414-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

a footnote, Defendant argues that Odell improperly "relied on 16 adverse event reports," which Defendant contends are not reliable evidence and "are not materials on which electrical engineers [] reasonably rely." *Id.* at 3 n.1 (quotation marks omitted). Lastly, Defendant argues that Odell "simply parrots" the opinions of two other experts, Ms. Christina Bernstein and Dr. Paul Steiner, neither of whom are experts in the instant case. *Id.* at 3.

Plaintiff responds that Odell's opinion is reliable and that Defendant mischaracterizes the scientific and medical community's acceptance of AEM. *See* Odell Opp'n at 2–3. Plaintiff also argues that Odell properly relies on Bernstein's and Steiner's expert reports, and that Odell "utilizes those expert opinions to acquaint himself with background information in reaching [Odell's] *own* opinions and conclusion." *Id.* at 4 (emphasis in original).

The Court agrees with Plaintiff. The Court finds that Odell relies on sufficient evidence to show that at least a portion of the medical community would view AEM as making the MCS safer. Further, the Court finds that Odell does not improperly rely on other experts' reports. Finally, the Court finds that Odell's citations to adverse event reports does not render Odell's testimony unreliable. The Court addresses each point in turn.

### a. Odell Relies on Sufficient Evidence to Show That at Least a Portion of the Medical Community Views AEM as Effective

The Court disagrees that the absence of comparative studies of the MCS's safety with and without AEM, and the low adoption rate of AEM in hospitals, indicates that the medical community have rejected Odell's views. *See* Odell Mot. at 2. The Ninth Circuit has held that "testimony may still be deemed reliable enough to be admitted" even in the absence of "peer review and publication." *Clausen*, 339 F.3d at 1056 (citing *Daubert*, 43 F.3d at 1318). Instead, the expert must "show that they have followed the scientific evidence method, as it is practiced by (at least) a recognized minority of scientists in their field." *Daubert*, 43 F.3d at 1319.

Here, despite AEM's low adoption rate and the lack of comparative studies, Odell relies on other evidence to demonstrate that at least a portion of the medical community would agree that AEM would make the da Vinci system's MCS safer. Specifically, Odell's expert declaration

11
Case No. 18-CV-06414-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL

states that "AEM has received praise in the literature and independent test laboratory ECRI publisher of Health Devices," Odell Decl. at 4, which is a "non-profit organization" that conducts independent medical device evaluations. Odell Opp'n at 2 n.1. Additionally, Odell's declaration states that Valleylab, "the largest manufacture of electrosurgical generators and accessories," also praised AEM. *See* Odell Decl. at 4. Moreover, Odell states that "[m]illions of procedures [are] performed with AEM," and that the low 5% adoption rate stems from "market barriers for AEM instruments that have nothing to do with efficacy or cost." *Id.* Further, Odell relies on various studies and reports that highlight the danger of insulation failure from the da Vinci system's MCS. *See id.* at 5–6. Odell's opinion thus uses a reliable methodology, notwithstanding the fact that Odell does not point to a specific study comparing the safety of the MCS with and without AEM.

In sum, Odell's opinions do not reflect views that have not been accepted by the medical community. Accordingly, Odell's opinion may not be excluded on this basis.

### b. Odell's Use of the Bernstein and Steiner Expert Reports Is Proper

Furthermore, the Court disagrees with Defendant that Odell's use of two previous expert reports merits exclusion. *See* Odell Mot. at 3–5. As Plaintiff notes, courts recognize that "an expert can appropriately rely on the opinions of others if other evidence supports [the expert's] opinion and the record demonstrates that the expert conducted an independent evaluation of that evidence." *In re Conagra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014); *see also Jerpe v. Aerospatiale*, No. CIV. S-03-555 LKK/DAD, 2007 WL 1394969, at *6 (E.D. Cal. May 10, 2007) (admitting an opinion where the expert relied on another expert's testimony); *Gray v. United States*, No. 05cv1893 J(BLM), 2007 WL 4644739, at *8 (S.D. Cal. Mar. 12, 2007) (same). Additionally, an expert may also rely on previous expert reports where the expert supplements the prior report with additional evidence and experience, and where the expert "does not rely exclusively" on the prior report. *Guadiana v. State Farm Fire & Cas. Co.*, No. CIV 07-326 TUC FRZ (LAB), 2013 U.S. Dist. LEXIS 202237, at *10 (D. Ariz. Oct. 18, 2013) ("[The expert] does not rely exclusively on [the prior expert's] opinion []. His opinions are also informed by his direct

experience and observations . . . .").

Here, the Court finds that Odell's opinion does not merely parrot the opinions of Bernstein and Steiner. Instead, Odell incorporates these prior opinions in conjunction with extensive additional evidence to reach Odell's ultimate conclusion. Specifically, Odell's deposition testimony shows that Odell relied on Bernstein's report to conclude that regulations and statutes that cover medical devices "require[] [Defendant] to address issues . . . with a design change." ECF No. 69-1 Ex. B at 27:15–28:7 ("Odell Dep."). The same deposition testimony also indicates that Odell relied on Steiner's report for the notion that Steiner "was extremely critical of the material used [in the MCS] because [the material] would result in full thickness insulation failures." *Id.* at 32:6–22.

Although the deposition testimony indicates that Odell did not independently verify the conclusion of either report, this is not a situation in which Odell solely relied on the reports without independent evidence. *See id.* at 30:23–31:1; 33:1–9. Instead, as discussed above, Odell relied on a variety of other evidence apart from Bernstein's and Steiner's reports. Thus, Odell did not "rely exclusively" on the previous opinions of Bernstein and Steiner, but instead incorporated extensive additional evidence. *Guadiana*, 2013 U.S. Dist. LEXIS 202237, at *10 ("[The expert] does not rely exclusively on [the prior expert's] opinion []. His opinions are also informed by his direct experience and observations . . . ."). Moreover, Odell's deposition testimony demonstrates that Odell relied on the Bernstein and Steiner reports for limited purposes. *See generally* Odell Dep. Indeed, Odell's expert declaration only makes a single reference to each report. *See* Odell Decl. at 1. In light of Odell's minimal reliance on the previous expert reports, as well as Odell's additional evidence, the Court declines to take the drastic measure of excluding Odell's opinion as to the MCS.

### c. Odell's Use of Adverse Event Reports Is Proper

Finally, the Court also disagrees with Defendant that Odell's use of "adverse event reports" renders Odell's opinion unreliable. *See* Odell Mot. at 3 n.1. Defendant cursorily argues

in a footnote that "adverse event reports are not materials on which electrical engineers (or any other scientific expert)" may reasonably rely. *Id.* As Defendant notes, when adverse event reports are the sole materials on which experts in other cases have relied, courts have excluded those experts. *See, e.g.*, *Casey v. Ohio Medical Prods.*, 877 F. Supp. 1380, 1386 (N.D. Cal. 1995) (explaining that "case reports are not reliable scientific evidence of causation" and excluding expert report because it solely relied on case reports); *see also McClain v. Metabolife Internat'l, Inc.*, 401 F.3d 1233, 1254 (11th Cir. 2005) (holding that "in light of all the other failures of proof on the reliability of their methods, Plaintiffs' experts cannot now redeem their opinions with this type of anecdotal evidence [*i.e.*, case reports]").

However, in contrast to the experts in the only cases cited by Defendant, Odell's opinion does not *solely* rely on such reports in the instant case. Instead, Odell combines adverse event reports with the additional sources of information discussed above. *See generally* Odell Decl. at 1–7. Accordingly, Odell's use of adverse event reports does not warrant exclusion. As with Odell's reliance on Bernstein's and Steiner's reports, Defendant may challenge Odell's use of adverse event reports through cross-examination, contrary evidence, and closing argument at trial.

In sum, the Court finds that Odell's testimony that the MCS is defective for failure to incorporate AEM relies on sufficient evidence, does not improperly rely on previous expert reports, and does not improperly rely on adverse event reports. Therefore, the Court DENIES Defendant's motion to exclude Odell's opinion as to the MCS.

In sum, the Court finds that Odell's testimony that the MCS is defective for failure to incorporate AEM is reliable and does not improperly rely on previous expert reports. Therefore, the Court DENIES Defendant's motion to exclude Odell's opinion as to the MCS.

### 2. Odell's Testimony as to Defects in da Vinci System's TCA

Lastly, Defendant objects to Odell's opinions concerning defects in the da Vinci system's TCA because "(1) Odell is not qualified to offer [the opinions]; and (2) [the opinions] are unreliable." Salsbury Mot. at 4. However, Defendant also claims that Odell's opinions "relating

1  to the TCA are untimely" and that "the parties have agreed Odell will not be offered or asked
2  about the TCA and are working out the parameters of such a stipulation." *Id.* at 1 n.1.
3  Nonetheless, Defendant presents these arguments "out of an abundance of caution, should the
4  parties be unable to reach a final agreement on the withdrawal of [Odell's opinion on the TCA]."
5  *Id.*
6  Plaintiff's opposition does not address Defendant's arguments. *See* Salsbury Opp'n at 1.
7  Instead, Plaintiff states that "Defendant correctly notes that Plaintiff will not offer or ask Mr. Odell
8  about the TCA, unless Defendant opens the door at trial." *Id.* Therefore, because Plaintiff does
9  not oppose Defendant's motion to exclude Odell's opinion regarding the TCA, the Court
10 GRANTS Defendant's motion with respect to Odell's opinions on the da Vinci system's TCA.

**IV.  CONCLUSION**

For the foregoing reasons the Court DENIES Defendant's motion to exclude Salsbury's opinions concerning causation of Plaintiff's injury and defects in the da Vinci system; DENIES Defendant's motion to exclude Odell's opinion concerning defects in the da Vinci system's MCS; and GRANTS Defendant's motion to exclude Odell's opinion concerning defects in the da Vinci system's TCA.

**IT IS SO ORDERED.**

Dated: April 24, 2020

_____
LUCY H. KOH
United States District Judge

15
Case No. 18-CV-06414-LHK
ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO EXCLUDE THE EXPERT OPINIONS OF DR. HELEN SALSBURY AND MR. ROGER ODELL